IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of CATERPILLAR CRÉDITO, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE, SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, ENTIDAD REGULADA, for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in a Foreign Proceeding | Misc. Case No. 22-mc-273 |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO <u>OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING</u>**

BUCHANAN INGERSOLL & ROONEY PC
640 Fifth Avenue, 9th Floor
New York, NY 10019-6102
Tel.: (212) 440-4400
Fax: (212) 440-4401

*Counsel for Applicant Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objeto Múltiple, Entidad Regulada*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

I.    PERSONAL GUARANTEES AND VMSC'S DEFAULT ............................................. 3

II.   CURAÇAO PROCEEDING .......................................................................................... 7

III.  SCOPE OF DISCOVERY REQUESTED .................................................................... 8

ARGUMENT ......................................................................................................................... 9

I.    THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS AND THIS COURT HAS THE AUTHORITY TO GRANT THE REQUESTED DISCOVERY ........................................ Error! Bookmark not defined.

II.   THE COURT SHOULD EXERCISE ITS STATUTORY AUTHORITY TO COMPEL DISCOVERY BECAUSE EVERY INTEL FACTOR SUPPORTS GRANTING THE SECTION 1782 APPLICATION ............ Error! Bookmark not defined.

    A.   Respondent Is Not A Party to the Curaçao Proceeding and the Discovery Sought Is Outside the Jurisdictional Reach of Curaçao Courts ............................ 11

    B.   The Curaçao Court Will Be Receptive to Section 1782 Assistance ..................... 11

    C.   Caterpillar Crédito Brings Its Application in Good Faith ..................................... 12

    D.   The Requested Discovery Is Not Unduly Intrusive or Burdensome ..................... 13

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Ex Parte Apple Inc.*,
    No. MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012).................................15

*In re Atvos Agroindustrial Investimentos S.A.*,
    481 F. Supp. 3d 166 (S.D.N.Y. 2020)...............................................................10, 11, 12

*In re Bayerische Motoren Werke AG*,
    No. 22 MC 115 (VB), 2022 WL 2817215 (S.D.N.Y. July 19, 2022).......................................14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012).................................................................................10

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011)...............................................................................12

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019)...........................................................................10, 11

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
    27 F.4th 136 (2d Cir. 2022) ..........................................................................12, 13

*In re Application of Gilead Pharmasset LLC*,
    No. 14-MC-243 (GMS), 2015 WL 1903957 (D. Del. Apr. 14, 2015)......................................15

*In re Habib*,
    No. 21-MC-522 (KMK), 2022 WL 1173364 (S.D.N.Y. Apr. 20, 2022)................................14

*In re Hornbeam Corp.*,
    722 F. App'x 7 (2d Cir. 2018) .........................................................................3, 9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)............................................................................... *passim*

*In re Kolomoisky*,
    No. M19-116, 2006 WL 2404332 (S.D.N.Y. Aug. 18, 2006) ..................................................9

*Kulzer v. Esschem*,
    390 F. App'x 88 (3d Cir. 2010) ........................................................................12

*In re Mesa Power Grp. LLC*,
    No. 2:11-MC-270-ES, 2013 WL 1890222 (D.N.J. Apr. 19, 2013) .........................................13

*In re Mesa Power Grp. LLC*,
 No. CIV.A. 2:11-MC-280-E, 2012 WL 6060941 (D.N.J. Nov. 20, 2012) ................................3

*In re Mota*,
 No. MC 19-00369 (MN), 2020 WL 95493 (D. Del. Jan. 8, 2020) ..........................................14

*In re Ex Parte Application of Qualcomm Inc.*,
 162 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................................................14

*In re Sevier*,
 No. CV-22-MC-80-RGA-SRF, 2022 WL 3923679 (D. Del. Aug. 31, 2022) ................... 13-14

*In re Sociedad Militar Seguro de Vida*,
 985 F. Supp. 2d 1375 (N.D. Ga. 2013) ..............................................................................12, 13

*In re YS GM Marfin II LLC*,
 No. 20 MISC. 182 (PGG), 2022 WL 624291 (S.D.N.Y. Mar. 2, 2022)..................................14

**Statutes**

28 U.S.C. § 1782 ............................................................................................................... *passim*

28 U.S.C. § 1782(a) .......................................................................................................... *passim*

Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objeto Múltiple, Entidad Regulada ("Caterpillar Crédito") respectfully submits this Memorandum of Law and the exhibits thereto, including the sworn declarations of Eric de Vries (Ex. 1, Declaration of Eric de Vries in Support of *Ex Parte* Application Pursuant to 28 U.S.C. § 1782 ("de Vries Decl.")) and Joana Antunes dos Santos Rego Billett (Ex. 2, Declaration of Joana Antunes dos Santos Rego Billett in Support of *Ex Parte* Application Pursuant to 28 U.S.C. § 1782 ("Rego Decl."))[1], in support of its Application, pursuant to 28 U.S.C. § 1782, for an Order permitting it to serve a subpoena on American Express Company ("Amex" or "Respondent").

## PRELIMINARY STATEMENT

Caterpillar Crédito seeks narrow document discovery for use in a litigation brought against Caterpillar Crédito and Carlos Marcelino Jose Bellosta Pallares ("Mr. Bellosta") by Mr. Bellosta's wife, Carolina Elizabeth Várady de Bellosta ("Mrs. Bellosta") before the Court of first instance of Curaçao (the "Curaçao Proceeding"). The documents sought in this Application may have a profound impact on the outcome of that litigation.

In the Curaçao Proceeding, Mrs. Bellosta seeks to annul two personal guarantees given by Mr. Bellosta to Caterpillar Crédito in 2015 and 2016 to secure his company's payment obligation under a loan agreement with Caterpillar Crédito (the "Personal Guarantees"). Mrs. Bellosta alleges that the Personal Guarantees that Mr. Bellosta gave to Caterpillar Crédito are invalid because, under Curaçao law, Mr. Bellosta first needed her consent to give the Personal Guarantees, which he did not obtain. (de Vries Decl. ¶¶ 6-7.) According to Mrs. Bellosta, the validity of the Personal Guarantees should be determined based on Curaçao law

---

[1] The exhibits referred to herein (Exs. 1-6) are attached to the Declaration of Abigail F. Coster submitted concurrently herewith.

because her habitual residence was in Curaçao at the time the Personal Guarantees were issued. (*See* Ex. 3, Complaint filed by Mrs. Bellosta in the Curaçao Proceeding ("Bellosta Complaint") at 2-3.)

Caterpillar Crédito disputes Mrs. Bellosta's contentions. At the outset, Caterpillar Crédito believes that at the time Mrs. Bellosta filed her complaint with the Court of first instance of Curaçao, Mr. Bellosta's residence was not in Curaçao. If true, the Curaçao court does not have jurisdiction over either defendant and the complaint should be dismissed. (de Vries Decl. ¶¶ 9-11.) Caterpillar Crédito further believes that at the time of the execution of the Personal Guarantees, Mrs. Bellosta's habitual residence also was not in Curaçao. As a result, the Curaçao Civil Code is not applicable and the Bellostas cannot resort to its provisions in their quest to avoid repaying the substantial sums owed to Caterpillar Crédito. (*Id.* at ¶ 8.)

To prove these facts, Caterpillar Crédito is seeking evidence through this proceeding to show that Mr. Bellosta was not residing in Curaçao when Mrs. Bellosta filed her complaint, and—contrary to her allegations in the Curaçao Proceeding—Mrs. Bellosta likewise was not a resident of Curaçao at the time Mr. Bellosta issued the Personal Guarantees. Caterpillar Crédito likely will be able to establish these facts through (1) records of all activity on the credit/debit cards held individually or jointly by the Bellostas which are likely to show their location throughout the relevant periods as these records are likely to indicate the shops, restaurants, dry cleaners, etc. which they frequented individually or together, and (2) the billing address for the credit/debit card statements.

Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." 28 U.S.C.

§ 1782(a). These statutory requirements are all satisfied here. Respondent resides in this District, the discovery sought is for use in the Curaçao Proceeding, and Caterpillar Crédito is a defendant in the Curaçao Proceeding and therefore an interested party. In addition, the Application satisfies the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004): (1) Respondent is a non-participant in the Curaçao Proceeding and may not be compelled to produce any related documents or other information in the Curaçao Proceeding; (2) the discovery Caterpillar Crédito seeks is highly relevant to its defenses in the Curaçao Proceeding; (3) the Application is not an attempt to circumvent Curaçao's proof-gathering restrictions; and (4) producing the documents will present minimal burden to Respondent. In such circumstances, courts in this district have authorized the *ex parte* filing of applications for discovery under 28 U.S.C. § 1782.[2]

Caterpillar Crédito thus respectfully requests that the Court grant its Section 1782 Application and allow the issuance of a subpoena substantially in the form of that contained in Exhibit A to the concurrently filed Application (the "Proposed Subpoena").

## FACTUAL BACKGROUND

### I. PERSONAL GUARANTEES AND VMSC'S DEFAULT

Caterpillar Inc. ("Caterpillar") is the world's leading manufacturer of construction and mining equipment, diesel and natural gas engines, industrial gas turbines and diesel-electric locomotives. Caterpillar, a Delaware corporation and the ultimate parent company for the Caterpillar group of companies, is a U.S. Fortune 100 company with an extensive network of

---

[2] *See, e.g.*, *In re Hornbeam Corp.*, 722 F. App'x 7, 11 (2d Cir 2018) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Mesa Power Grp. LLC*, No. CIV.A. 2:11-MC-280-E, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012) ("[I]t is 'appropriate for this Court to issue the order on an *ex parte* basis, without prejudice to the rights of the subpoenaed parties to file a motion to vacate or quash' within thirty days of the issuance of this order.") (citation omitted).

3

independently owned Caterpillar dealers across the world. Caterpillar sells its parts and machines through this network of Caterpillar dealers, each of them having a certain designated service territory. Caterpillar often provides financing to these dealers to enable them to purchase inventory, upgrade facilities, and expand their ability to sell Caterpillar's products and service Caterpillar's end customers. Caterpillar Crédito, a Mexican corporation and an indirect subsidiary of Caterpillar, is the entity that provides financing and related support to Caterpillar's dealers and customers.

Until March 2019, the Venequip Group—a group of companies under the ultimate ownership and control of Mr. Bellosta—was an authorized dealer of Caterpillar's machinery and parts with the service territory of Venezuela under two agreements between Venequip SA, the Venequip Group's principal entity, and Caterpillar Americas CV, a Dutch partnership related to Caterpillar SARL, which is a Swiss subsidiary of Caterpillar. (de Vries Decl. ¶ 3.) Venequip SA sold and repaired Caterpillar's heavy equipment and electric power generation equipment in a wide variety of industries, including the oil and gas, mining, infrastructure, construction, and marine industries.

In 2007, Caterpillar Crédito and VMSC Curazao N.V. ("VMSC"), the Venequip Group's financing entity (which was majority held and controlled by Mr. Bellosta), entered into a loan agreement in the amount of $4,869,299.53 (the "Original Loan Agreement"). The Original Loan Agreement was secured by, *inter alia*, a corporate guarantee between Caterpillar Crédito (the beneficiary), Venequip SA, Venequip Machinery Sales Corporation, and Venequip SA Limited (later renamed Solidus Investment Corporation). Between 2007 and 2015, the Original Loan Agreement was extended several times and amended to increase the principal loan amount. On June 7, 2012, the loan agreement was amended to increase the principal amount to up to $55

million. It was increased again on June 19, 2012, to $68 million. On November 27, 2013, VMSC executed a promissory note in favor of Caterpillar Crédito up to a principal amount of $99,302,153.47.[3] (de Vries Decl. ¶ 3.)

On October 13, 2015, VMSC (as Borrower) and Caterpillar Crédito (as Lender) entered into a further extension of the loan (the "VMSC Loan Agreement," Ex. 4). (de Vries Decl. ¶ 4.) In the VMSC Loan Agreement, VMSC acknowledged that it owed Caterpillar Crédito $55,218,820.10 under the parties' pre-existing loan arrangements. It further acknowledged that the purpose of the VMSC Loan Agreement was to increase the line of credit available to VMSC from Caterpillar Crédito to a total of $110 million (which included the approximately $55 million then outstanding) (the "VMSC Loan"). Days later, on October 16, 2015, Mr. Bellosta, the most significant beneficial shareholder of the Venequip Group, gave a personal guarantee to Caterpillar Crédito (the "2015 Guarantee," Ex. 5) to secure VMSC's obligations under the VMSC Loan. (de Vries Decl. ¶ 4.)

A year later, on October 11, 2016, the VMSC Loan was amended at Venequip Group's request to provide for a 12-month grace period with interest paid every six months and reductions in the rate of interest when certain repayment thresholds were met. On the same date, Mr. Bellosta gave a second personal guarantee (the "2016 Guarantee," Ex. 6) on substantially similar terms to the 2015 Guarantee, personally guaranteeing VMSC's obligations under the amended VMSC Loan. The 2016 Guarantee did not terminate or otherwise alter the terms of the 2015 Guarantee. (de Vries Decl. ¶ 4.)

---

[3] In July 2014, Caterpillar Crédito secured two political risk insurance policies related to its exposure to VMSC. These insurance policies were a requirement of Caterpillar Crédito extending credit to the Venequip Group. The Venequip Group was required to pay the premiums on these policies.

Under the Personal Guarantees, Mr. Bellosta contractually committed to pay Caterpillar Crédito the entire sum outstanding under the VMSC Loan as it became due or upon acceleration (if not paid by VMSC), including interest and any costs incurred by Caterpillar Crédito in seeking payment under the Personal Guarantees. (Exs. 5-6.)

Until September 2017, the Venequip Group consistently made its scheduled payments using funds derived from the group's operations. By late 2017, however, it became apparent that the Venequip Group would not continue to make its payments. The Venequip Group paid Caterpillar Crédito its September 2017 loan payment on October 23, 2017, over a month after the payment was due. Then the Venequip Group failed to pay the October, November, and December installments of the VMSC Loan. In response, on December 15, 2017, Caterpillar Crédito sent VMSC a Notice of Default under the VMSC Loan, noting that VMSC had missed these three installments and demanding payment within 10 days. On December 19, 2017, Caterpillar Crédito also sent a notice to Mr. Bellosta, informing him of VMSC's default. Both the notice to VMSC and to Mr. Bellosta stated that if Caterpillar Crédito did not receive full payment before December 26, 2017, the total unpaid balance would become due and payable per the loan agreements, and Caterpillar Crédito reserved all rights to collect from VMSC and Mr. Bellosta. (de Vries Decl. ¶ 5.)

Caterpillar Crédito did not receive a response to these notices. To date, neither VMSC nor Mr. Bellosta (nor, for that matter, any other member of the Venequip Group) has repaid any additional portion of the VMSC Loan. Under the terms of the Personal Guarantees, on February 4, 2022, Caterpillar Crédito filed a request for arbitration under the Rules of Arbitration of the International Chamber of Commerce against Mr. Bellosta to enforce the Personal Guarantees (the "ICC Arbitration"). (*Id.* at ¶ 5.)

## II. CURAÇAO PROCEEDING

Two months after the ICC Arbitration was filed, Mrs. Bellosta initiated the Curaçao Proceeding against Caterpillar Crédito and Mr. Bellosta. In the Curaçao Proceeding, Mrs. Bellosta seeks to invalidate the Personal Guarantees. (Bellosta Compl. at 2-3.) Mrs. Bellosta argues that the validity of the Personal Guarantees must be adjudicated under the Curaçao Civil Code because at the time Mr. Bellosta issued the Personal Guarantees, her habitual residence was in Curaçao. (*Id.*)

If Curaçao law applies, Mrs. Bellosta argues that the Personal Guarantees are invalid under Articles 1:88 and 1:89 of the Curaçao Civil Code. (de Vries Decl. ¶ 7.) In particular, under paragraph 1(c) of Article 1:88, a spouse needs the approval of the other spouse to provide security for a debt of a third person. Under Article 1:89, in the absence of the required spousal consent, the issuance of such a guarantee may be unilaterally annulled by the other spouse whose consent was not sought. (*Id.*) She is therefore seeking a declaratory judgment from the Court of first instance of Curaçao establishing that she has successfully annulled the Personal Guarantees. (Bellosta Compl. at 4.)

Two of Caterpillar Crédito's main defenses in the Curaçao Proceeding are relevant to this Application. ***First,*** Caterpillar Crédito asserts that the Court of first instance of Curaçao does not have jurisdiction over the defendants because neither is a resident of Curaçao. The only possible basis for jurisdiction is if the Curaçao court has personal jurisdiction over at least one "anchor" defendant. Because there is no dispute Caterpillar Crédito is not a resident of Curaçao, the only possible anchor defendant is Mr. Bellosta. But Caterpillar Crédito believes that Mr. Bellosta also was not a resident of Curaçao at the time Mrs. Bellosta filed her action (*i.e.*, on April 6, 2022), so the Curaçao court lacks jurisdiction over Mrs. Bellosta's claim. (de Vries Decl. ¶¶ 10-11.) ***Second,*** Caterpillar Crédito asserts the provisions of the Curaçao Civil Code do not apply because

7

Mrs. Bellosta was not a habitual resident of Curaçao when the Personal Guarantees were given (*i.e.*, October 16, 2015 and October 11, 2016). (*Id.* at ¶ 8.) Caterpillar Crédito has reason to believe that the Bellostas' sporadic presence in Curaçao around the relevant times did not establish their residence in Curaçao within the meaning of the applicable Curaçao laws. (*Id.* at ¶¶ 8-9.)

### III. SCOPE OF DISCOVERY REQUESTED

In furtherance of its defenses in the Curaçao Proceeding, Caterpillar Crédito seeks discovery from Respondent under Section 1782 to uncover that Mr. and Mrs. Bellosta did not have residency in Curaçao.

Amex is a multinational financial services corporation, incorporated under the laws of New York, and having its principal place of business in New York. Amex's primary business is to facilitate electronic funds transfers throughout the world, most commonly through Amex-branded credit cards. The discovery sought consists of monthly account statements and other debit or credit card records kept by Amex throughout the relevant time periods of all debit or credit cards held individually or jointly by Mr. and Mrs. Bellosta. It is highly likely that each of Mr. Bellosta and Mrs. Bellosta will have a relationship with Amex and will use cards issued by Amex to make payments given that Amex is the preferred payment method of Latin American high net worth individuals. (Rego Decl. ¶ 7.)

In particular, Caterpillar Crédito seeks the following: (i) monthly account statements and financial records for Mrs. Bellosta from October 16, 2014 to October 11, 2017, and (ii) monthly account statements and financial records for Mr. Bellosta from October 16, 2014 to October 11, 2017 and April 6, 2021 to present.

This discovery of U.S. material bears directly on Caterpillar Crédito's defenses in the Curaçao Proceeding of showing the lack of the Curaçao court's jurisdiction and the inapplicability of the Curaçao Civil Code to the validity of the Personal Guarantees. Caterpillar Crédito will

prevail in the Curaçao Proceeding if it shows either that (i) Mr. Bellosta was not a resident of Curaçao when Mrs. Bellosta filed her complaint, or (ii) Mrs. Bellosta was not a habitual resident of Curaçao when Mr. Bellosta gave the Personal Guarantees. (de Vries Decl. ¶ 11.) Caterpillar Crédito's request is limited to this narrow subpoena *duces tecum*. Caterpillar Crédito does not seek to depose anyone at this time.

## ARGUMENT

### I. THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS AND THIS COURT HAS THE AUTHORITY TO GRANT THE REQUESTED DISCOVERY

Section 1782 authorizes district courts to order documentary and testimonial discovery for use in foreign proceedings. *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person.").

"A district court is authorized to grant a § 1782 application if (1) the person from whom discovery is sought resides (or is found) within the court's district, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a[n] ... interested person." *In re Hornbeam Corp.*, 722 F. App'x at 9 (internal citations and quotation marks omitted). Caterpillar Crédito easily meets all three requirements.

*First*, Respondent is incorporated under the laws of New York and its principal place of business is also in New York City, and it thus resides in this District. *See e.g.*, *In re Kolomoisky*, No. M19-116, 2006 WL 2404332, at *1 (S.D.N.Y. Aug. 18, 2006) (respondent corporation both located in New York City and incorporated in New York).

*Second*, Caterpillar Crédito seeks discovery for "use in a proceeding in a foreign or international tribunal" in Curaçao, *i.e.*, in the Curaçao Proceeding. (de Vries Decl. ¶¶ 2, 11, 13.)

9

***Third***, as a defendant in the Curaçao Proceeding (*id.* at ¶ 2), Caterpillar Crédito is an "interested party." *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) (observing that "since Applicant is a litigant [in the foreign proceeding], it plainly is an interested person" within the meaning of Section 1782).

## II. THE COURT SHOULD EXERCISE ITS STATUTORY AUTHORITY TO COMPEL DISCOVERY BECAUSE EVERY INTEL FACTOR SUPPORTS GRANTING THE SECTION 1782 APPLICATION

Because all three mandatory statutory requirements are met, the Court has the authority to compel the production of evidence under § 1782(a). Whether to do so then becomes a matter of the Court's discretion. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("Once the statutory requirements are met, a district court is free to grant discovery in its discretion."). Considerations that inform the Court's discretion—often referred to as the *Intel* factors—include:

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding',. . . ; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'

*In re del Valle Ruiz*, 939 F.3d 520, 533-34 (2d Cir. 2019) (citing *Intel*, 542 U.S. at 264-65). "There are limitations on a district court's discretion, however. District courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn,* 673 F.3d at 81 (internal citations, quotation marks, and brackets omitted). Here, the Court should exercise its discretion and grant Caterpillar Crédito's Application because each of the four *Intel*

factors supports its request.[4]

### A. Respondent Is Not a Party to the Curaçao Proceeding and the Discovery Sought Is Outside the Jurisdictional Reach of Curaçao Courts

The first *Intel* factor, "whether the person from whom discovery is sought is a participant in the foreign proceeding," supports Caterpillar Crédito's Application. The Supreme Court has recognized that the need for U.S. court assistance is most apparent where the Section 1782 respondent is not a party to the foreign action and not otherwise within the jurisdiction of the foreign court. *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). Here, Respondent will not be a party to the Curaçao Proceeding. (de Vries Decl. ¶ 12.) Nor will Curaçao courts otherwise have the power to compel discovery by Respondent. (*Id.*) Accordingly, this factor supports granting Caterpillar Crédito's Application.

### B. The Curaçao Court Will Be Receptive to Section 1782 Assistance

"The second *Intel* factor weighs the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance. A court should deny discovery on the basis of lack of receptiveness only where it is provided with authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Atvos*, 481 F. Supp. 3d at 176-77

---

[4] Furthermore, the possibility that certain relevant, non-privileged documents might be located abroad is no bar to granting this Application as Section 1782 allows extraterritorial discovery "so long as the documents to be produced are within the subpoenaed party's possession, custody, or control." *In re del Valle Ruiz*, 939 F.3d at 533.

11

(internal citations and quotation marks omitted). The relevant inquiry is whether the foreign tribunal would consider the evidence produced pursuant to a Section 1782 order. *In re Chevron Corp.*, 633 F.3d 153, 162-63 (3d Cir. 2011). The party opposing discovery bears the burden of persuading the court that the foreign tribunal would not consider the discovery sought by the Section 1782 order. *Id.*

Here, there is no indication that the Curaçao court would not consider the discovery Caterpillar Crédito seeks. (de Vries Decl. ¶ 13 (stating that the Curaçao court will consider all documentary evidence submitted); *In re Sociedad Militar Seguro de Vida*, 985 F. Supp. 2d 1375, 1380 (N.D. Ga. 2013) (finding no evidence that a Curaçao court would not be receptive to judicial assistance from the U.S. court).) Quite the opposite. The Curaçao court likely would be extremely interested in evidence bearing on its own jurisdiction and concerning the applicability of the Curaçao Civil Code to the Personal Guarantees, which is the very foundation of Mrs. Bellosta's claim. (de Vries Decl. ¶¶ 7, 11.) The Curaçao court would thus be willing to consider any evidence Caterpillar Crédito obtains from this Application. (*Id.* at ¶¶ 11, 13.) The burden to show otherwise rests with the Respondent. *In re Atvos*, 481 F. Supp. 3d at 177; *In re Chevron Corp.*, 633 F.3d at 162-63. Therefore, this second factor also supports Caterpillar Crédito's Application.

### C. Caterpillar Crédito Brings Its Application in Good Faith

The third *Intel* factor, "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" likewise supports Caterpillar Crédito. *In re Atvos*, 481 F. Supp. 3d at 177 (internal citations and quotation marks omitted). The inquiry focuses on bad faith. It requires courts to "consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules." *Kulzer v. Esschem*, 390 F. App'x 88, 92 (3d Cir. 2010); *see also Fed. Republic of Nigeria v. VR Advisory*

*Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022) ("In the context of § 1782 and the third *Intel* factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence."); *Intel*, 542 U.S. at 264-65. Here, Caterpillar Crédito brings its request in good faith and does not seek to evade Curaçao fact-gathering rules. (de Vries Decl. ¶ 13.)

Because Respondent—a New York entity with its principal place of business in New York—is not a Curaçao entity, and will not be a party to the Curaçao Proceeding, the only way that Caterpillar Crédito may obtain the requested discovery from it is through Section 1782. (*Id.* at ¶¶ 12-13.) Since Curaçao courts do not have jurisdiction over Respondent, they "would be unable to compel [Respondent] to produce the … documents requested." *In re Sociedad Militar Seguro de Vida*, 985 F. Supp. 2d at 1379-80 (granting Section 1782 application for use in Curaçao). Caterpillar Crédito thus seeks U.S. assistance in good faith to obtain documents from an entity that is outside the jurisdictional reach of Curaçao courts. Thus, this third *Intel* factor also weighs in favor of granting Caterpillar Crédito's Application. *See, e.g.*, *Fed. Republic of Nigeria*, 27 F.4th at 153; *In re Mesa Power Grp. LLC*, No. 2:11-MC-270-ES, 2013 WL 1890222, at *7 (D.N.J. Apr. 19, 2013) (finding no circumvention because there was no evidence that the application was "an attempt to side-step proof-gathering or other restrictions" and the respondent "may be outside the jurisdictional reach of the tribunal").

### D. The Requested Discovery Is Not Unduly Intrusive or Burdensome

Finally, Caterpillar Crédito is not seeking unduly intrusive or burdensome discovery. "As to the fourth and final *Intel* factor, the court has discretion to consider whether the information sought in the subpoena is overbroad, disproportionate, or unduly burdensome. This analysis requires application of the Rule 26 standard to determine whether the requested discovery 'is relevant to any party's claim or defense and proportional to the needs of the case.'" *In re Sevier*,

No. CV-22-MC-80-RGA-SRF, 2022 WL 3923679, at *3 (D. Del. Aug. 31, 2022) (internal citations omitted); *see also In re Bayerische Motoren Werke AG*, No. 22 MC 115 (VB), 2022 WL 2817215, at *5 (S.D.N.Y. July 19, 2022) ("To assess whether a subpoena is unduly burdensome under Rule 26, courts consider, among other things, the requested 'information's relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, [and] the particularity with which the documents are described.'") (citation omitted). Requests made under Section 1782 run afoul of this factor when they are "not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (citation omitted). That is not the case here.

*First*, the Proposed Subpoena is sufficiently narrowly tailored, especially "given the scope of the [Curaçao Proceedings] and Respondent's eventual opportunity to object and/or submit a motion to quash or modify the subpoena." *In re Mota*, No. MC 19-00369 (MN), 2020 WL 95493, at *2 (D. Del. Jan. 8, 2020). The Proposed Subpoena asks only for specific records and documents pertaining to two individuals and cover two limited time periods relevant to Mr. and Mrs. Bellosta's whereabouts. *See In re Habib*, No. 21-MC-522 (KMK), 2022 WL 1173364, at *4 (S.D.N.Y. Apr. 20, 2022); *In re YS GM Marfin II LLC,* No. 20 MISC. 182 (PGG), 2022 WL 624291, at *11 (S.D.N.Y. Mar. 2, 2022) (applicants' discovery requests were not unduly intrusive or burdensome where the requests were "limited, seeking documents only related to [specific individuals] from January 1, 2018 to the present"). Thus, far from burdensome, Caterpillar Crédito's Application will require little effort for Respondent to comply. In fact, it is likely that Respondent keeps these records in an electronic format easily searchable using Mr. Bellosta and Mrs. Bellosta's names.

14

*Second*, even if Mr. or Mrs. Bellosta had confidentiality concerns with the limited information sought by this Application, confidentiality concerns "do not pertain to the intrusiveness or burdensomeness" if the discovery is relevant to the foreign litigation. *See In re Application of Gilead Pharmasset LLC*, No. 14-MC-243 (GMS), 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015) (citing *In re Ex Parte Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *3 (N.D. Cal. May 2, 2012)). The documents sought are unquestionably relevant to the Curaçao Proceeding as they are integral to Caterpillar Crédito's defense. For one, Caterpillar Crédito believes that the evidence sought will establish that the Curaçao court does not have jurisdiction over the defendants because Mr. Bellosta was not a resident of Curaçao at the time Mrs. Bellosta brought her complaint. Further, Mrs. Bellosta cannot prevail in the Curaçao Proceeding if Caterpillar Crédito manages to show that she was not a habitual resident of Curaçao when Mr. Bellosta gave the Personal Guarantees.

*Finally*, the discovery sought by Caterpillar Crédito is clearly not a fishing expedition. Caterpillar Crédito's narrow discovery request is limited to seeking documents and records from only one entity regarding two specific individuals during two limited time periods. Furthermore, as set forth above, the discovery sought is highly relevant as the information to be obtained through the Proposed Subpoena is crucial in the determination of the Curaçao court's jurisdiction, *i.e.*, whether Mr. Bellosta had residency in Curaçao when Mrs. Bellosta filed her complaint, and is also potentially dispositive of Mrs. Bellosta's complaint, *i.e.*, that she was a habitual resident of Curaçao when Mr. Bellosta gave the Personal Guarantees.

Thus, this fourth and final factor equally supports the Application.

## CONCLUSION

Because the three Section 1782 statutory requirements are met, and because all four discretionary *Intel* factors are met, Caterpillar Crédito respectfully moves the Court to issue an

15

order pursuant to 28 U.S.C. § 1782(a) approving this Application to compel discovery in accordance with the Federal Rules of Civil Procedure for the purpose of obtaining monthly bank account statements and other bank records kept by Amex throughout the relevant time periods of all accounts held individually or jointly by Mr. and/or Mrs. Bellosta.

Caterpillar Crédito also respectfully requests that the Court approve Caterpillar Crédito's *ex parte* Application for discovery, grant issuance of the subpoena substantially in the form in which it appears in the Proposed Subpoena, direct Amex to produce the documents in its possession, custody or control, as requested in the Proposed Subpoena, and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 27, 2022

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By: /s/ Abigail F. Coster
Abigail F. Coster
640 Fifth Ave., 9th Floor
New York, NY 10019-6102
Tel.: (212) 440-4400
Fax: (212) 440-4401
E-mail: abigail.coster@bipc.com

*-and-*

Mark A. Kornfeld
401 E. Jackson St., Suite 2400
Tampa, FL 33602-5236
Tel.: (813) 222-8180
Fax: (813) 222-8189
E-mail: mark.kornfeld@bipc.com

*Counsel for Applicant Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objeto Múltiple, Entidad Regulada*