```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
─────────────────────────────────────

In re Application of CATERPILLAR
CRÉDITO, SOCIEDAD ANÓNIMA DE CAPITAL
VARIABLE, SOCIEDAD FINANCIERA DE        22-mc-273 (JGK)
OBJETO MÚLTIPLE, ENTIDAD REGULADA,
                                        MEMORANDUM OPINION AND
                   Applicant,           ORDER

For an Order Pursuant to 28 U.S.C. §
1782 Granting Leave to Obtain
Discovery for Use in a Foreign
Proceeding.

─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The Court has received the Report and Recommendation by Magistrate Judge Barbara C. Moses, dated May 24, 2023, which recommends that this Court grant, in part, the application of Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objeto Múltiple, Entidad Regulada ("CAT"), pursuant to 28 U.S.C. § 1782, for leave to serve a subpoena on American Express Company ("AmEx") for use in a proceeding in Curaçao. ECF No. 25. Parties in interest, Carolina Varady de Bellosta ("Ms. Bellosta") and Carlos Belosta Pallares ("Mr. Bellosta") (collectively, "the Bellostas"), have filed timely objections to the Report and Recommendation. ECF No. 30.

The Magistrate Judge issued a Report and Recommendation to be reviewed de novo but noted uncertainty as to whether a Magistrate Judge's decision granting an application under 28 U.S.C. § 1782 is a dispositive motion warranting de novo review

or a non-dispositive decision to be reviewed on a more permissive basis for clear error.[1] Even reviewing the Report and Recommendation on a de novo basis, the objections are **overruled** and the Report and Recommendation **adopted** substantially for the reasons stated therein.

I.

This case arises out of loan transactions entered into by CAT and VMSC Curazao N.V. ("VMSC"), the financing arm of a corporate entity controlled by Mr. Bellosta. De Vries Decl. at ¶ 3, ECF No. 3-1. On two occasions, Mr. Bellosta signed personal guarantees in favor of CAT to secure VMSC's loan obligations in an aggregated amount of over $100 million. Id. ¶ 4; see also Coster Decl. Exs. 5-6, ECF Nos. 3-7, 3-8. When VMSC fell behind on its payments, CAT sent notices of default to VMSC and Mr. Bellosta, but these notices went unanswered. De Vries Decl. ¶ 5. CAT then initiated legal proceedings, including an arbitration before the International Chamber of Commerce, in which it sought

---

[1] The Magistrate Judge noted that her prior approach -- treating § 1782 applications as non-dispositive motions she was authorized to hear and determine pursuant to § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) -- was consistent with the consensus view in this District. R.&R. at 1-2 n.1, ECF No. 25. However, a recent unreported decision by the Court of Appeals for the Second Circuit called into question the propriety of this view. See Associaocao dos Profissionais dos Correios v. Bank of New York Mellon, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 29, 2023).

2

to enforce the guarantees made by Mr. Bellosta. Id.; see also Coster Decl. Ex. 3, at 20-39, ECF No. 3-4.

In response, Ms. Bellosta sued CAT and Mr. Bellosta in the Curaçao Court, seeking to invalidate the guarantees ("Curaçao Proceeding"). De Vries Decl. ¶ 6; see also Coster Decl. Ex. 3, ECF No. 3-3. Ms. Bellosta contends that the guarantees are unenforceable because Mr. Bellosta signed them without her consent, and under Curaçao law, spousal consent is required to enter into any guarantee. Coster Decl. Ex. 3 ¶¶ 8-9, ECF No. 3-3; De Vries Decl. ¶ 7. CAT raised two defenses. First, CAT argued that the Curaçao Proceeding should be dismissed for lack of jurisdiction because both CAT and Mr. Bellosta were not domiciled in Curaçao at the time the proceeding was brought. CAT Mem. of Law at 7, ECF No. 2. The Curaçao Court denied that jurisdictional defense, deciding, among other things, that CAT failed to overcome the presumption that Mr. Bellosta was domiciled in Curaçao at the inception of the Curaçao Proceeding. Curaçao J. at 10-11, ECF No. 17-4. But the Curaçao Court, which is scheduled to resume proceedings on the merits in November 2023, did not rule on CAT's application for certain documents that may be covered by CAT's § 1782 request here. Second, CAT argued that Ms. Bellosta was not a habitual resident of Curaçao when the guarantees were entered into, rendering Curaçao law inapplicable to the guarantees. CAT Mem. of Law at 7-8. CAT,

3

seeking discovery of credit and debit card records held by the Bellostas, states that the records are relevant to whether Mr. Bellosta was domiciled in Curaçao at the time Ms. Bellosta brought the Curaçao Proceeding and to whether Ms. Bellosta was a habitual resident of Curaçao when Mr. Bellosta signed the guarantees. See De Vries Decl. ¶ 11.

In a thorough Report and Recommendation, the Magistrate Judge found that the requirements of § 1782 were satisfied and that the Intel discretionary factors favored granting the application. See R.&R., ECF No. 25. The Magistrate Judge limited the time period for which the records were deemed relevant and determined that a protective order should restrict the records for use in the Curaçao Proceeding, but otherwise granted the application pursuant to § 1782. See id. at 20-21. The Bellostas now object to the Report and Recommendation, contending, among other things, that the documents are being sought for use in the arbitration proceeding in which CAT seeks to enforce the guarantee and not for use in the Curaçao Proceeding, Obj. to R.&R. at 15-17, ECF No. 31, that the documents sought are not relevant to the Curaçao Proceeding, and that the requested subpoena is otherwise overbroad, id. at 11-14.

**II.**

28 U.S.C. § 1782 "authorizes, but does not require,"[2] district courts to provide assistance to discovery applicants for use in foreign proceedings. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 255 (2004). Under § 1782, courts have wide discretion to determine whether to grant discovery, and can tailor any requested discovery "to avoid attendant problems." Application of Esses, 101 F.3d 873, 876 (2d Cir. 1996). In considering discovery applications under § 1782, courts should consider the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. (quoting In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992)).

In order to obtain discovery under § 1782, the applicant must show the following requirements:

> (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

5

Id. at 875 (quoting In re Application of Gianoli Aldunate, 3 F.3d 54, 58 (2d Cir. 1993)).

When these three requirements are satisfied, district courts consider the following factors in deciding whether to exercise their broad discretion: (1) whether the discovery target is a party to the foreign proceeding, (2) whether the foreign tribunal will be receptive to assistance from a United States federal court, (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery request is unduly intrusive or burdensome. Intel, 542 U.S. at 264-65; In re del Valle Ruiz, 939 F.3d 520, 533-34 (2d Cir. 2019).

**A.**

Turning first to the three requirements of § 1782, the Bellostas do not dispute that AmEx is found in the Southern District of New York, nor do they dispute that CAT is an "interested person" under the statute. They focus their dispute on the second requirement -- that the requested discovery be "for use" in a foreign proceeding. See Application of Esses, 101 F.3d at 875. The Bellostas contend that the documents sought are "fishing expeditions into [their] sensitive credit records [that] have no bearing on the Curaçao proceeding" but rather are

6

"designed to obtain asset discovery for use or in connection with the ICC Arbitration." Obj. to R.&R. at 8.

As the Magistrate Judge correctly concluded, CAT has shown that the documents are "for use" in the Curaçao Proceeding. "For use" in § 1782 requires only "that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017). In this case, the AmEx records are likely to reveal information about where Mr. Bellosta made day-to-day purchases and which businesses he frequented -- information directly relevant to showing that he was in fact residing in another jurisdiction at the time the Curaçao Proceeding was brought. Similarly, the records sought are directly related to CAT's defense that Ms. Bellosta was not a habitual resident of Curaçao when the guarantees were entered into. Records detailing her financial transactions would reveal information on frequented locales and businesses where she spent her money -- information directly relevant to showing whether she was in fact a habitual resident of Curaçao at the relevant times. This is not a case where the discovery sought is "for anticipated use in nonexistent, purely hypothetical proceedings." Ex parte Abdalla, No. 20-mc-727, 2021 WL 168469, at *5 n.2 (S.D.N.Y. Jan. 19, 2021) (collecting cases). The Curaçao Proceeding is a real, ongoing proceeding, and the

7

Magistrate Judge specifically limited CAT's use of the documents to that proceeding. R.&R. at 20-21.

The Curaçao Court's rejection of CAT's jurisdictional defense does not, as the Bellostas argue, render the discovery CAT seeks irrelevant or not "for use" in that proceeding. See In re Accent Delight, 869 F.3d at 132 (holding that the "for use" requirement is satisfied as long as the § 1782 applicant can show the applicant's practical ability to inject the requested information into a foreign proceeding). The Curaçao Court ruled that CAT had failed to rebut the presumption that Mr. Bellosta was a Curaçao resident when the Curaçao proceeding was brought because CAT presented insufficient facts and circumstances to support such a conclusion. Curaçao J. at 10. However, the AmEx records are highly germane to the inquiry into Mr. Bellosta's domicile and could be used by CAT on appeal to show that he resided in a specific alternative location outside Curaçao. Moreover, the Bellostas do not dispute that any evidence obtained pursuant to § 1782 is available for an appeal.

Nor does the "for use" requirement demand a showing of proportionality, as the Bellostas argue. Obj. to R.&R. at 9 ("[O]verly-broad subpoenas such as CAT's putative subpoena that seek only 'kernels of relevant information' and are disproportionate to the needs of the case are insufficient to satisfy relevancy in the 'for use' requirement."). The concern

8

for proportionality is properly addressed by the limitation imposed on CAT's use of the records to the Curaçao proceeding. See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 (2d Cir. 1995) ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participants in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.") In any event, CAT argues convincingly that these documents are highly relevant to its proffered defenses.

The Court agrees with the Magistrate Judge's conclusion that CAT has met its burden to show that the requested discovery is "for use in a foreign proceeding." 28 U.S.C. § 1782.

**B.**

Turning to the discretionary Intel factors, the Magistrate Judge found that the first, third, and fourth factors weigh in favor of granting the application, and the Bellostas object. The Court agrees with the Magistrate Judge.

The first Intel factor requires the district court to consider whether the person from whom discovery is sought is a participant in the foreign proceeding. As to this factor, the Bellostas argue that the records sought by CAT can be obtained directly from the Bellostas who are parties to the Curaçao proceeding. They assert that because the documents sought by CAT are within their possession or control, seeking discovery from

9

AmEx is effectively the same as seeking it from them. But this assertion is unavailing. First, it does not cover the internal AmEx documents that review the Bellostas' accounts. The Bellostas do not possess internal AmEx records responsive to the proposed subpoena -- such as marketing or internal analyses of their credit scores -- and fail to explain how these records fall within their control. Moreover, this argument is undercut by the substantial precedent in this District and elsewhere authorizing the production of records from banks where the account holder is in fact a party to the foreign proceeding. See, e.g., In re Furstenberg Fin. SAS, No. 18-mc-44, 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018); In re Iraq Telecom Ltd., No. 18-mc-458, 2019 WL 3798059, at *4 (S.D.N.Y. Aug. 13, 2019); In re Lake Holding & Fin. S.A., No. 20-mc-652, 2021 WL 2581427, at *17 (S.D.N.Y. June 23, 2021); Lopes v. Lopes, 180 F. App'x 874, 877 (11th Cir. 2006). Accordingly, the first Intel factor does not counsel against granting the discovery request.

The third Intel factor weighs whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of [Curaçao] or the United States." To prevail on this factor, the Bellostas must first identify the foreign proof-gathering restrictions that CAT is attempting to circumvent. "[A]uthoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782 .

10

. . would provide helpful and appropriate guidance to a district court in the exercise of its discretion." Euromepa, 51 F.3d at 1100. The Bellostas, however, fail to identify any proof-gathering restrictions, discovery rules, or policies on which the requested subpoena encroaches. Nor is there authoritative proof that the Curaçao Court would reject evidence produced pursuant to § 1782. Instead, the Bellostas advance an alternative argument. They contend that CAT's pursuit of parallel discovery in both the Curaçao forum and this Court causes the third Intel factor to "cut[] decidedly" in their favor. Obj. to R.&R. at 19-21. For the reasons articulated in the Report and Recommendation, this argument is without merit. While a district court may consider the pendency of a parallel discovery request in its analysis of the third Intel factor, there is no prohibition on seeking the same or similar evidence in both courts. See In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] quasi-exhaustion requirement finds no support in the plain language of the statute and runs counter to its express purposes . . . ."). The Bellostas proffer no explanation of how or why CAT's parallel discovery requests intimate a "bad faith" effort to circumvent the Curaçao Court. Accordingly, the third Intel factor does not weigh against production.

The fourth and final <u>Intel</u> factor asks whether the requested discovery is unduly burdensome or intrusive. The Bellostas argue that the Magistrate Judge failed to evaluate properly whether the proposed subpoena is substantively overbroad and cumulative. On its face, the request is not unduly burdensome for the Bellostas because the request is made to AmEx, and not to them, and AmEx has not objected. The Bellostas characterize CAT's request as a "quintessential fishing expedition" because the discovery requests are not properly tailored to the issues before the Curaçao Court. Obj. to R.&R. at 22. But as CAT convincingly argued and the Court explains above, the records sought are directly relevant to the Curaçao Proceeding, and CAT does not have access to the kinds of day-to-day transaction information contained in the AmEx records. Additionally, the Report and Recommendation limits the temporal scope of CAT's request to account for the fact that Ms. Bellosta's residency after the guarantees were entered into is not legally significant. Furthermore, the Report and Recommendation limits the use of the AmEx records to the Curaçao Proceeding and offers the parties an opportunity to negotiate an appropriate protective order. Any burden or intrusiveness placed on the Bellostas by the grant of CAT's § 1782 application is adequately addressed by these protections.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Court adopts the Magistrate Judge's Report and Recommendation in its entirety. Accordingly, the objections are **overruled.** CAT's application for an order pursuant to 28 U.S.C. § 1782 to obtain discovery for use in a foreign proceeding is **granted in part.** Discovery is authorized consistent with the Magistrate Judge's Report and Recommendation. The Clerk is respectfully directed to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
            **October 20, 2023**

                                    _____
                                           **John G. Koeltl**
                                    **United States District Judge**