USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 6/11/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of CATERPILLAR CRÉDITO, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE, SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, ENTIDAD REGULADA,

Applicant,

For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in a Foreign Proceeding.

22-MC-00273 (JGK) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In a Memorandum Opinion and Order dated October 20, 2023 (O&O), the Honorable John G. Koeltl, United States District Judge, granted in part the application of Caterpillar Crédito, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objeto Multiple, Entidad Regulada (CAT), made pursuant to 28 U.S.C. § 1782, for leave to serve American Express Company (AmEx) with a subpoena for certain account records reflecting activity by intervenors Carlos Marcelino Jose Bellosta Pallares and Carolina Elizabeth Varady de Bellosta (together, the Bellostas), for use in a proceeding (the Curaçao Proceeding) pending before the Court of First Instance of Curaçao.[1] In accordance with my underlying Report and Recommendation (R&R), CAT's use of the AmEx records was "limited to the Curaçao Proceeding," and the parties were given an opportunity to "negotiate an appropriate protective order that incorporates this limitation as well [as] any appropriate restrictions on the disclosure of the Bellosta[s'] non-public financial information." R&R, 2023 WL 5016497, at *10; *see also* O&O, 2023 WL 5016497, at *2, *4 ("Discovery is authorized consistent with the Magistrate Judge's Report and Recommendation").

---

[1] *In re Caterpillar Credito, Sociedad Anonima de Cap. Variable, Sociedad Financiera de Objeto Multiple, Entidad Regulada*, 2023 WL 6938264 (S.D.N.Y. Oct. 20, 2023), *adopting In re Credito*, 2023 WL 5016497 (S.D.N.Y. May 24, 2023).

Now before me, on referral from Judge Koeltl (Dkt. 41), is CAT's letter-motion, dated May 14, 2024 (CAT Ltr. Mtn.) (Dkt. 38), requesting either a pre-motion discovery conference or entry of CAT's proposed form of protective order (CAT Prop. Prot. Ord.) (Dkt. 38-1). The Bellostas filed an opposition letter on May 22, 2024 (Opp. Ltr.) (Dkt. 44), requesting entry of their own proposed form of protective order (Bellosta Prop. Prot. Ord.) (Dkt. 44-2). CAT filed a reply letter (CAT Reply Ltr.) (Dkt. 45) on May 24, 2024. The parties principally disagree as to whether the Bellostas should be permitted to redact the dollar amounts of the Bellostas' AmEx transactions, as well as any "sensitive information they in good faith believe could be used in asset discovery," and designate the redacted material as "Attorneys' Eyes Only" (AEO), thereby making it unavailable to CAT's in-house attorneys, other employees, consultants, and experts – even if the same documents are filed unredacted in the Curaçao Proceeding. *See* CAT Ltr. Mtn. at 2; Opp. Ltr. at 2.

No conference is required. For the reasons that follow, the Court will enter CAT's proposed form of protective order.

**Background**

This miscellaneous action stems from a loan default by VMSC Curazao N.V. (VMSC), which is the financing arm of Venequip Group, a conglomerate controlled by Mr. Bellosta. *See* O&O, 2023 WL 6938264, at *1. On October 16, 2015 and October 11, 2016, Mr. Bellosta signed personal guarantees in favor of CAT to secure VMSC's loan obligations in an aggregated amount of over $100 million. *Id.*; *see also* R&R, 2023 WL 5016497, at *2. When VMSC defaulted, CAT initiated a variety of legal proceedings, including an arbitration before the International Chamber of Commerce (ICC), in which it sought to enforce the guarantees made by Mr. Bellosta. O&O, 2023 WL 6938264, at *1.

On April 6, 2022, Ms. Bellosta sued her husband and CAT in Curaçao, seeking a declaratory judgment that the personal guarantees Mr. Bellosta signed were "nullified" under Curaçao law because he did not obtain her consent before signing them. O&O, 2023 WL 6938264, at *1. CAT raised two defenses: first, that the Curaçao Court lacks jurisdiction because Mr. Bellosta was not a resident of Curaçao when the proceeding was brought, in 2022; and second, that Ms. Bellosta was not a "habitual resident" of Curaçao when the guarantees were entered into in 2015 and 2016, rendering Curaçao law inapplicable. *Id*. When CAT came to this Court, it argued that the Bellostas' AmEx records were relevant to both issues, and could be used, in support of its jurisdictional and choice-of-law arguments, either in the Court of First Instance or on appeal. *Id*. [2]

The Bellostas intervened and opposed CAT's application, arguing, among other things, that CAT's true objective was to use the AmEx records in the ICC arbitration to identify and locate Mr. Bellosta's assets. *See* R&R, 2023 WL 5016497, at *7; O&O, 2023 WL 6938264, at *2. I found that argument "unpersuasive," R&R, 2023 WL 5016497, at *7, noting that it seemed "unlikely" that the Bellostas' AmEx records (for limited periods) would permit CAT to identify and value Mr. Bellosta's "cash at bank, real estate, vehicles, air or sea craft, stocks and shares, art, [and] any other

[2] On April 3, 2023, before this § 1782 proceeding was filed, the Court of First Instance ruled that it did have jurisdiction over Mr. Bellosta, and thus over the case. *See* R&R, 2023 WL 5016497, at *4. However, CAT explained, it had the right to appeal that ruling and to submit new evidence in support of its appeal, including any evidence obtained pursuant to § 1782. *Id.*

On January 8, 2024, after the O&O was issued, the Court of First Instance ruled that Ms. Bellosta was not a habitual resident of Curaçao when the guarantees were entered into, and hence could not pursue nullification under Curaçao law. *See* CAT Reply Ltr. Ex. A (Dkt. 45-1) (Judgment). However, the Bellostas have "indicated their intent to appeal" that ruling. CAT Reply Ltr. at 1.

In finding that Ms. Bellosta did not habitually reside in Curaçao in 2015 and 2016, the Curaçao court relied in part on "call and data information" showing that during those years Ms. Bellosta spent more time in four other countries (France, the Netherlands, Venezuela, and the United States) than she did in Curaçao. Judgment ¶ 4.4. CAT obtained that call and data information from T-Mobile, after obtaining leave to do so pursuant to a § 1782 application filed in the Western District of Washington. *See* R&R, 2023 WL 5016497, at *3 n.5.

assets," as the Bellostas feared. *Id.* I further reasoned that this Court could avoid any misuse of the AmEx records "by limiting CAT's use of the Bellostas' AmEx records to the Curaçao Proceeding, as the Western District of Washington did with respect to the § 1782 discovery that CAT obtained from T-Mobile." *Id*. The District Judge agreed. O&O, 2023 WL 6938264, at *2-3.

CAT initially sought both Bellostas' AmEx records from October 16, 2014 through October 11, 2017, as well as Mr. Bellosta's records from April 6, 2021 to "the present." R&R, 2023 WL 5016497, at *10. The Court narrowed those periods, permitting discovery of Ms. Bellosta's AmEx records for approximately two years, from October 16, 2014 through November 11, 2016, and limiting discovery of Mr. Bellosta's Amex records to 13 months, from April 6, 2021 through May 6, 2022. *Id*.; *see also* O&O, 2023 WL 6938264, at *4.

**<u>The Parties' Positions</u>**

Under CAT's proposed form of protective order, the documents produced by AmEx (the Production) "only shall be used in connection with the Curaçao Proceeding, and shall not in any manner be used for any other purpose, including to prosecute, defend, or attempt to settle any other proceeding, lawsuit, litigation, post-judgment process or proceeding (other than one in connection with the Curaçao Proceeding), or arbitration (including without limitation the ICC arbitration [CAT] has brought against Mr. Bellosta and any related post-judgment process or proceeding)." CAT Prop. Prot. Ord. ¶ 2. Additionally, the Bellostas may designate as "Confidential" any "personal identifying information, information showing the Bellostas' individual AmEx transactions, and credit information." *Id.* ¶ 3. Disclosure of Confidential material is limited to specific categories of persons, including CAT's counsel (here and in the Curaçao Proceeding); CAT's officers, directors, and employees (including in-house counsel) "to whom disclosure is reasonably necessary for the Curaçao Proceeding"; and CAT's experts and consultants "to whom

disclosure is reasonably necessary for the Curaçao Proceeding," provided they first agree in writing to be bound by the protective order. *Id*. ¶ 5.2. CAT may not file Confidential material in this Court until it has met and conferred with the Bellostas as to whether a sealing order is required, and may not file Confidential material in any foreign proceeding without using its "reasonable best efforts to keep such material confidential." *Id*. ¶¶ 5.3, 5.4.

The Bellostas' proposed form of protective order includes all of the provisions summarized above. Additionally, the Bellostas' version permits them to designate as AEO, and redact, "the dollar amounts of transactions reflected in the Production, as well as other sensitive information they in good faith believe could be used in asset discovery." Bellosta Prop. Prot. Ord. ¶ 6.2(d). Unlike Confidential material, AEO material could *not* be disclosed to CAT's in-house counsel, its other employees, or the experts and consultants working on the Curaçao Proceeding. *Id*. ¶¶ 5.2(b), (c). Through its outside counsel, CAT would be permitted to file unredacted AmEx records (revealing AEO material) in the Curaçao Proceeding. *Id*. ¶ 5.4.[3] Even then, however, CAT's in-house counsel, employees, experts, and consultants would not be permitted to see them. *Id*.

CAT notes that its form of protective order tracks the order issued by the Western District of Washington (after a similar dispute between the parties) with respect to the Bellostas' T-Mobile records. *See* CAT Ltr. Mtn. at 2; CAT Reply Ltr. at 2 n.1; *see also* Protective Order (Dkt. 17), *In re Caterpillar Credito*, No. 22-CV-1549 (W.D. Wash. Nov. 16, 2022).[4] CAT argues that its form

---

[3] The Bellostas explain that this is because "[i]n Curacao, court filings are not publicly accessible." Opp. Ltr. at 4.

[4] In that case, the Bellostas sought the right to "redact all information in the phone records that does not pertain directly to the Bellostas' location at times relevant to the Curaçao litigation." Order (Dkt. 16) at 3, *In re Caterpillar Credito*, No. 22-CV-1549 (W.D. Wash. Nov. 16, 2022). The court concluded that CAT's proposed order should be entered "because (1) the parties' proposed language regarding the handling and disclosure of confidential information will address the Bellostas' privacy and confidentiality concerns and (2) the Bellostas' proposed redactions are not an appropriate tool to exclude irrelevant information." *Id*. at 5.

of order provides more than enough protection for the Bellostas, *see* CAT Ltr. Mtn. at 1-2; that courts in this district routinely disallow unilateral redactions to discovery documents (other than for privilege), particularly where a protective order permits the parties to designate any private or sensitive material "confidential" and thereby restrict its use, *see id.* at 3; and that CAT would be prejudiced by the AEO provisions sought by the Bellostas, because they would "unjustly deprive CAT of the ability to review and approve the use of plainly relevant information in its own legal filings." *Id*. at 2.

The Bellostas argue that this Court should approve its proposed form of protective order because "(1) CAT already agreed to redactions of 'dollar amounts of transactions reflected in the Production, as well as other sensitive information' in its prior negotiations, and agreed to similar redactions in another [§] 1782 proceeding it initiated against the Bellostas; (2) redactions are consistent with this Court's directive that a protective order contain 'appropriate restrictions on the disclosure of the Bellostas' non-public information'; and (3) redactions are permissible as a matter of law." Opp. Ltr. at 2-3.[5]

**Discussion**

CAT is correct that "[t]he weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's

[5] In a § 1782 proceeding brought in Puerto Rico to obtain the Bellostas' banking records from a San Juan bank, the parties agreed amongst themselves that "the respondents would produce to [CAT] only those documents that were responsive to show Mr. Carlos M. Bellosta's location or residence during the period April 6, 2021, through April 6, 2022" (that is, roughly the same period that this Court identified as relevant to the question of Mr. Bellosta's residency when the Curaçao Proceeding was initiated). Minute Order (Dkt. 72), *In re Application of Caterpillar Crédito*, 22-MC-00568 (D.P.R. March 23, 2023). Thereafter, the presiding Magistrate Judge personally reviewed all of the redactions to satisfy himself (and CAT) that they were "correctly made" and that "none of the redacted information had any bearing on the location or residence of Mr. Bellosta during the relevant one-year period." *Id*. at 1-2.

unilateral determinations of relevancy." *Al Thani v. Hanke*, 2022 WL 1684271, at *1 (S.D.N.Y. May 26, 2022) (collecting cases) (internal quotation marks and citations omitted). Redactions for relevance would be particularly inappropriate here, given that this Court has already weighed the Bellostas' relevancy arguments and concluded that their AmEx records, within the specified periods, are "directly relevant to showing that [Mr. Bellosta] was in fact residing in another jurisdiction at the time the Curaçao Proceeding was brought," "directly related to CAT's defense that Ms. Bellosta was not a habitual resident of Curaçao when the guarantees were entered into," and "directly relevant to showing whether [Ms. Bellosta] was in fact a habitual resident of Curaçao at the relevant times." O&O, 2023 WL 6938264, at *2.

Similarly, unilateral redactions based on concerns about personal privacy or "sensitive" information are routinely disallowed, particularly where – as here – the parties have agreed to protective order terms that would allow them to designate sensitive information within otherwise relevant documents as "confidential" and restrict the use of that information even in connection with the legal proceeding for which those documents were produced. *See Al Thani*, 2022 WL 1684271, at *2 (rejecting request to redact otherwise-responsive text messages where defendant "fail[ed] to provide any argument as to why her concerns, including the disclosure of potentially sensitive information in the text messages, cannot be assuaged by the Protective Order entered in this case."); *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2022 WL 621957, at *2 (S.D.N.Y. Mar. 3, 2022) ("[U]nilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed, particularly where a protective order is in place allowing the parties to designate that information 'confidential' and restrict its use."); *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020) (compelling defendant to produce unredacted documents because it identified "no persuasive

grounds to depart from the general rule prohibiting relevance redactions" and because any "confidential or highly sensitive documents" could be "designated as confidential"), *objections overruled*, 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021).

I recognize that this case is somewhat different from those discussed above (and from the § 1782 proceedings in Washington and Puerto Rico) in that CAT is already in possession of the Production, which AmEx made on April 9, 2024. *See* CAT Ltr. Mtn. at 1. Consequently, the Bellostas do not propose to prevent CAT's outside counsel (or the Court of First Instance) from reviewing their AmEx records in unredacted form. Rather, they seek to prevent any *other* CAT personnel from reviewing the material they designate as AEO. The persons to be denied access would include CAT's in-house counsel working on the Curaçao Proceeding, *see* Bellosta Prop. Prot. Ord. ¶ 5.2(b); the CAT officers, directors, and employees "to whom disclosure [of Confidential material] is reasonably necessary for the Curaçao Proceeding," *id*.; and CAT's experts and consultants retained for purposes of the Curaçao Proceeding. *Id*. ¶ 5.2(c). Thus, the question before this Court is whether the Bellostas are entitled to a protective order that gives them the right to withhold portions of the AmEx records from the CAT personnel who are most deeply involved in the Curaçao Action whenever those portions reveal (i) "the dollar amounts" of their AmEx transactions or (ii) any other "sensitive information" that, in the Bellostas' view, "could be used in asset discovery." *Id*. ¶ 6.2(d).

I answer that question in the negative. A protective order may be issued, on a showing of "good cause," to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden to show good cause falls on the party seeking a protective order." *Trellian Pty, Ltd. v. adMarketplace, Inc.*, 2021 WL 363965, at *3 (S.D.N.Y. Feb. 3, 2021); *accord*, *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71

(S.D.N.Y. 2010). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotations and citations omitted); *see also Allen v. City of New York*, 420 F.Supp.2d 295, 302 (S.D.N.Y. 2006) (good cause under Rule 26(c) requires demonstrating a "clearly defined and serious injury" that would result from disclosure) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Duling*, 266 F.R.D. at 71 (quoting *Schiller v. City of New York*, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 17, 2007)). "[T]he harm must be significant, not a mere trifle." *Id.*

The Bellostas appear to misunderstand the applicable standard. Nowhere in their letter-brief do they explain what "clearly defined and serious injury" would result if a CAT in-house attorney, other employee, expert, or consultant reviewed their AmEx records (for the limited periods at issue here) in unredacted form. Nor do they explain why the usage limitations and confidentiality provisions in CAT's proposed protective order are inadequate to protect them against any risk of "annoyance, embarrassment, oppression, or undue burden or expense" that they might otherwise face. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 187-88 (S.D.N.Y. 2014) (denying motion for protective order, in substantial part, where movant failed to demonstrate "a 'clearly defined and serious injury' that would result from revealing the information to plaintiffs' attorneys under a protective order that would allow the information to be used solely in this lawsuit").

Instead, the Bellostas argue that since CAT was willing to accept *some* of their proposed AEO terms during the parties' earlier negotiations, *see* Opp. Ltr. at 2, it should not now be permitted to "back-off of its prior proposed protective order." *Id.* at 3. However, they stop well

short of asserting that CAT ever agreed to the form of order they now ask the Court to enter. *See id*. (conceding that, rather than accept CAT's compromise offer, the Bellostas countered with additional restrictions that would bar CAT's experts and consultants from reviewing AEO material even after it is filed in the Curaçao Proceeding).

Similarly, while the Bellostas contend that their preferred form of order is "consistent with the approach to which [CAT] agreed and which the Court approved in the District of Puerto Rico," Opp. Ltr. at 3, they fail to explain why that approach (which ultimately required the presiding Magistrate Judge to personally review each redacted bank statement) is necessary here – or is superior to the approach used in the Western District of Washington. In that case, the court entered an order limiting the use of the T-Mobile records to the Curaçao Proceeding and permitting the Bellostas to designate certain materials as "Confidential," but rejected the Bellostas' bid for more onerous restrictions. *See* R&R, 2023 WL 5016497, at *9 (explaining that any concerns about the misuse of non-public information concerning the Bellostas' spending habits "can be addressed through an appropriate protective order, *such as the order entered by the Western District of Washington*") (internal quotation marks and citations omitted; emphasis added).

The Bellostas are correct that this Court "specifically permitted" the parties to negotiate a protective order that limits the use of the AmEx records to the Curaçao Proceeding and includes "appropriate restrictions on the disclosure of the Bellosta's non-public financial information." Opp. Ltr. at 3 (quoting R&R, 2023 WL 5016497, at *10). It does not follow, however, that the AEO provisions they propose are "appropriate," particularly given the broad discretion that the Bellostas would have to designate – and redact – information bearing directly on the issues before the

Curaçao court.[6] The form of order submitted by CAT, however, meets both goals articulated by the Court. First, it expressly states that the AmEx records may only be used "in connection with the Curaçao Proceeding," and prohibits their use "for any other purpose," including to litigate the ICC arbitration. CAT Prop. Prot. Ord. ¶ 2. Second, it permits the Bellostas to designate as "Confidential" any "personal identifying information, information showing [their] individual AmEx transactions, and credit information," *id*. ¶ 3, and limits disclosure of such information to specific categories of persons, including (in addition to CAT's counsel) its officers, directors, employees, experts, and consultants "to whom disclosure is reasonably necessary for the Curaçao Proceeding." *Id*. ¶¶ 5.2(b), (c). Nothing in the Bellostas' letter-brief demonstrates that more is required to protect them from any identifiable harms.

**Conclusion**

For the reasons set forth above, CAT's motion (Dkt. 38) is GRANTED. The Court will enter CAT's proposed form of protective order.

Dated: New York, New York
June 11, 2024

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**

[6] The Bellostas assert that they would redact only "information unrelated to [their] location." Opp. Ltr. at 3. But this result is by no means assured by the language they propose. Suppose, for example, that Mr. Bellosta used his AmEx card to pay for a hotel suite or other accommodation outside of Curaçao. The "dollar amount" of the transaction – which the Bellostas would be entitled to redact – could shed light on whether he was there for a matter of days (suggesting a business trip or vacation) or months (suggesting that Curaçao was not, at that time, his residence).